1

2

3

4

5

6

FILED & ENTERED

JAN 25 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

7     **OPINION NOT FOR PUBLICATION**

8     **UNITED STATES BANKRUPTCY COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA**

10    **LOS ANGELES DIVISION**

11    In re:                                    Case No. 2:10-bk-57493-RK

12    SHAPPHIRE RESOURCES, LLC,                 Chapter 11

13              Debtor.                          Adv. No. 2:12-ap-02532-RK

14    _____       **FINDINGS OF FACT AND**
                                                **CONCLUSIONS OF LAW AFTER TRIAL**
15    SHAPPHIRE RESOURCES, LLC,
      a Utah limited liability company,

16              Plaintiff,

17         vs.

18    STANLEY TAMBINGON, an Individual,

19
                Defendant.
20    _____

21

22        The above-captioned adversary proceeding for turnover of real property and for

23    declaratory relief came on for trial before the undersigned United States Bankruptcy

24    Judge on March 13, 2015, April 30, 2015 and July 29, 2015.  Pursuant to Section 542 of

25    the Bankruptcy Code, 11 U.S.C. ("Bankruptcy Code"), and 28 U.S.C. § 2201, Plaintiff

26    Shapphire Resources, LLC ("Shapphire Resources" or "Plaintiff") brought this adversary

27    proceeding seeking declaratory relief that it has the ownership interest and right to

28    possession in the Property located at 2770 Cold Plains Drive, Hacienda Heights,

California 91745 (the "Property"), and turnover of the Property from Defendant Stanley

Tambingon ("Mr. Tambingon" or "Defendant").  Raymond H. Aver, Kateryna Belenka and

Han-Hsien Miletic, Law Offices Of Raymond H. Aver, A Professional Corporation,

appeared for Plaintiff.  Defendant appeared for himself.

On May 13, 2015, Plaintiff timely lodged its "[Proposed] Findings of Fact and

Conclusions of Law."  ECF 60; *see also,* Scheduling Order, filed on May 14, 2016, ECF

61.  On June 17, 2015, Defendant timely lodged his "Proposed Findings of Facts [sic] and

Conclusions of Law."  ECF 64.  On July 24, 2015, Plaintiff late-filed an objection to

Defendant's "Proposed Findings of Facts [sic] and Conclusions of Law."  ECF 65.  On

September 24, 2015, Plaintiff late-filed its "[Proposed] Amended Findings of Fact and

Conclusions of Law" on September 24, 2015.  ECF 69.  On September 29, 2015,

Defendant filed a response to Plaintiff's late-filed "[Proposed] Amended Findings of Fact

and Conclusions of Law," requesting an extension of time to file a substantive response

by October 22, 2015.  ECF 70.  The court granted this request by its order entered on

October 1, 2015.  ECF 71.  On November 9, 2015, Defendant filed a request to further

extend the deadline to respond to November 20, 2015.  ECF 76.  The court also granted

this request by its order entered on November 24, 2015, but required that any objection

of Plaintiff to Defendant's response be filed no later than December 1, 2015.  ECF 78.

Defendant filed his response to Plaintiff's "[Proposed] Findings of Fact and Conclusions

of Law" on November 23, 2015, ECF 77, and an "Explanation of delay of response to

Plaintiff's [proposed] amended findings of facts [sic] and conclusions of law" on

November 25, 2015, ECF 79.  Plaintiff filed an objection to Defendant's response on

December 2, 2015, ECF 81, after which, the court took the matter under submission.

Having considered the testimony of the witnesses, the documentary evidence

received at trial, and the oral arguments of the parties; and the proposed findings of fact

and conclusions of law submitted by the parties, and the objections thereto, the court

makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the

Federal Rules of Bankruptcy Procedure and Rule 52 of the Federal Rules of Civil Procedure.[1]

**<u>FINDINGS OF FACT</u>**

1.    Shapphire Resources is a Utah limited liability company doing business in Los Angeles County, California.  *Testimony of Susana Tubianosa* ("*Tubianosa Testimony*"), March 13, 2015, at 10:32 a.m.; *Tubianosa Testimony*, April 30, 2015, 9:57-9:59 a.m.

2.    Shapphire Resources is involved in the business of leasing real estate that houses "developmentally disabled" people and has leased real property to United Care Homes, Inc. ("United Care Homes"), among other entities.  *Tubianosa Testimony*, March 13, 2015, at 10:32-10:33 a.m.  Susana Tubianosa is the manager of Shapphire Resources.  *Id.*

3.    Mr. Tambingon is an individual residing at the Property.  *Defendant's "Response to Plaintiff's [proposed] amended findings of facts [sic] and conclusions of law*," filed by Mr. Tambingon, ECF 77, at 16:9-10 (page:line) and *"Proposed Findings of Facts [sic] and Conclusions of Law*," lodged by Mr. Tambingon, ECF 64, at 2:11 (page:line) ("I legally reside at 2770 Cold Plains Drive . . . ."); *Tubianosa Testimony*, March 13, 2015, at 10:59 a.m.

4.    Ms. Tubianosa and her ex-husband, George E. Gopez ("Mr. Gopez"), acquired title to the Property as "husband and wife, as joint tenants," on April 15, 1982 by means of a Grant Deed, which was recorded on May 28, 1982 in the Official Records of Los Angeles County, California (the "1982 Grant Deed").  *Plaintiff's Exhibit 2*, *1982 Grant Deed*.

5.    Ms. Tubianosa and Mr. Gopez executed a Grant Deed transferring sole

---

[1] Any findings of fact that should be properly characterized as conclusions of law will be considered as such, and any conclusions of law that should be properly characterized as findings of fact will be considered as such.

ownership of the Property to Ms. Tubianosa as an "Unmarried Woman" on May 6, 2003

as part of their division of marital property in their divorce (the "2003 Grant Deed").

*Plaintiff's Exhibit 3*, 2003 *Grant Deed*; *see also, Tubianosa Testimony*, March 13, 2015,

10:36-10:37 a.m.  The 2003 Grant Deed was recorded on June 6, 2003 with the County

Recorder of Los Angeles County, California.  *See Plaintiff's Exhibit 3, 2003 Grant Deed.*

6.      The Property is a 4-bedroom, 2-bathroom single-family residence and 2,400

square feet in area and was built in 1980.  *Tubianosa Testimony*, March 13, 2015, at

10:48-10:49 a.m.  The court finds that as such, the Property is not of inconsequential

value or benefit to the bankruptcy estate.

7.      Mr. Tambingon and Ms. Tubianosa were legally married on July 22, 2003

as shown by a License and Certificate of Confidential Marriage issued by the County of

Los Angeles, State of California.  *Defendant's Exhibit N*, *License and Certificate of

Confidential Marriage*; *Testimony of Stanley Tambingon ("Tambingon Testimony")*, April

30, 2015, at 10:18 a.m.; *see also, Tubianosa Testimony*, March 13, 2015, 11:04-11:05

a.m., 11:44 a.m.

8.      On May 19, 2004, Mr. Tambingon executed an Interspousal Transfer Grant

Deed, granting the Property to Ms. Tubianosa, which contained a separate statement

reciting that "**Stanley Tambingon**, Spouse of Grantee herein, hereby executes this deed

for the express purpose of relinquishing any and all property interest, community or

otherwise, Stanley Tambingon may have or may hereinafter acquire in the herein

referenced property" [i.e., the Property] to "**Susana Tubianosa**, a Married Woman, as

Her Sole and Separate Property."  *Plaintiff's Exhibit 4*, *Interspousal Transfer Grant Deed*

(bolding in original); *see also Tubianosa Testimony*, March 13, 2015, 10:38-10:39 a.m.

On June 10, 2004, the Interspousal Transfer Grant Deed was recorded with the County

Recorder of Los Angeles County, California.  *Plaintiff's Exhibit 4*, *Interspousal Transfer

Grant Deed*.

Mr. Tambingon testified at trial that he signed the Interspousal Transfer Grant Deed

because Ms. Tubianosa said the Property belonged to them and that he trusted her since

she was his wife, but that he did not read it and he did not know what he was signing. *Tambingon Testimony, April 30, 2015,* at 10:21-10:23 a.m.  The court finds that this testimony of Mr. Tambingon is self-serving and lacks credibility and does not give it much weight.  Besides, Mr. Tambingon did not present any documentary evidence at trial showing that he acquired any ownership interest in the Property, community or otherwise, prior to, during or after the execution of the Interspousal Transfer Grant Deed.  The court also finds that there was no undue influence on Mr. Tambingon to sign the Interspousal Transfer Grant Deed based on his failure to read the document before signing it and his high level of education with 22 years of completed education and his being a medical doctor in his country, Indonesia. *Defendant's Exhibit N*, *License and Certificate of Confidential Marriage* (marriage license signed by Mr. Tambingon representing that he had 22 years of completed education and indicating that his "state of birth" was Indonesia); *Defendant's Exhibit B, Family Law Case Minute Orders,* at 4 (the family law court noted in one of its minute orders that "RESPONDENT IS APPARENTLY A MEDICAL DOCTOR IN HIS COUNTRY").

9.    Ms. Tubianosa testified that at the time that Mr. Tambingon executed the Interspousal Transfer Grant Deed, Mr. Tambingon did not have a legal or equitable interest in the Property, but that the bank had requested the Interspousal Transfer Grant Deed for the refinancing of the mortgage on the Property. *Tubianosa Testimony*, March 13, 2015, at 10:38-10:39 a.m.

10.    Ms. Tubianosa testified that in early 2006, she offered to allow Mr. Tambingon to move to the Property and live there temporarily until the end of 2006, because she then still believed that she and Mr. Tambingon were going to have a church wedding and in order to sell the real property where Mr. Tambingon was living at the time, referred to at trial by her and Mr. Tambingon as the "Box Springs Property," which was owned by Shapphire Resources, so as to avoid the foreclosure of the Box Springs Property. *Tubianosa Testimony*, March 13, 2015, at 11:03-11:05 a.m., 11:17-11:18 a.m., 11:29-11:30 a.m., 11:39-11:44 a.m.; *Tubianosa Testimony*, April 30, 2015, at 9:37-9:38

a.m., 9:50 a.m.  She further testified that Mr. Tambingon did not move into the Property in 2006 as she offered and that he stayed at the Box Springs Property until 2009 when it was foreclosed upon.  *Tubianosa Testimony*, March 13, 2015, at 11:40-11:43 a.m.

11.     Based on Mr. Tambingon's testimony, it is unclear exactly when he moved into the Property; however, he admits in his proposed findings of fact and conclusions of law that he currently resides at the Property, *Defendant's "Response to Plaintiff's [proposed] amended findings of facts [sic] and conclusions of law,"* ECF 77, at 16:9-10 (page:line(s)) and *"Proposed Findings of Facts [sic] and Conclusions of Law,"* ECF 64, at 2:11 (page:line); and claims as he testified at trial that he acquired a community property ownership interest in the Property during his marriage to Ms. Tubianosa, *Tambingon Testimony*, April 30, 2015, at 10:21-10:22 a.m., 10:25-10:29 a.m., 10:34 a.m.

12.     Ms. Tubianosa testified that Shapphire Resources became the sole owner of the Property in 2008, *Tubianosa Testimony*, March 13, 2015, at 10:40 a.m., 11:09-11:10 a.m., which testimony was corroborated by a Grant Deed executed by Ms. Tubianosa in favor of Shapphire Resources on August 8, 2008 and recorded with the County Recorder's Office of Los Angeles County on August 20, 2008 (the "Shapphire Resources Grant Deed"), *see Plaintiff's Exhibit 5*, *Shapphire Resources Grant Deed*. The Grant Deed recited that Ms. Tubianosa as "a married woman as her sole and separate property" transferred all of her interest in the Property to Shapphire Resources. *Id.*

13.     Ms. Tubianosa testified that after she transferred the Property to Shapphire Resources, Shapphire Resources started "setting [the Property] up to be a home for the developmentally disabled," including installing fire sprinklers and ramps, renovating the doors and shower rooms to accommodate wheelchair access, and doing all of the things necessary to accommodate the developmentally disabled.  *Tubianosa Testimony*, March 13, 2015, at 10:40-10:43 a.m.  She also testified that, while the construction was underway, the Property was vacant.  *Id.*

14.     Ms. Tubianosa filed proceedings in state court for annulment of her

marriage with Mr. Tambingon in 2008.  *Tubianosa Testimony*, April 30, 2015, at 9:41 a.m.
She testified at trial that in 2009, she first discovered Mr. Tambingon living at the
Property, without her authorization or that of Shapphire Resources, and that Mr.
Tambingon had changed the locks to the Property.  *Tubianosa Testimony,* March 13,
2015 at 10:43 a.m., 11:40-11:42 a.m.  She testified that Shapphire Resources never
entered into a rental agreement with Mr. Tambingon for use of the Property, nor did he
make any rental payments to Shapphire Resources for use of the Property.  *Id.,* at 10:44
a.m.  She also testified that she asked Mr. Tambingon to move out of the Property in
2009 during the annulment proceedings, *id.,* at 11:15 a.m., but Mr. Tambingon did not
vacate the Property, *id.*, at 10:59 a.m.

15.    Mr. Tambingon testified at trial that he acquired a community property
ownership interest in the Property during their marriage because Ms. Tubianosa used her
community property earnings to pay the mortgage against the Property and refinanced
the mortgage in 2004 during their marriage.  *Tambingon Testimony*, April 30, 2015, at
10:21-10:22 a.m., 10:25-10:29 a.m., 10:34-10:35 a.m.  Mr. Tambingon did not submit any
evidence corroborating his testimony that Ms. Tubianosa used any community property
earnings to make the mortgage payments during their marriage, nor did he offer any
corroborative evidence otherwise showing that he acquired a community property
ownership interest in the Property through the refinancing of the Property or otherwise
during their marriage.

16.    At trial, Ms. Tubianosa testified that United Care Homes was making the
mortgage payments on the Property.  *Tubianosa Testimony*, April 30, 2015, at 10:47-
10:49 a.m.; *see also, Tambingon Testimony*, April 30, 2015, at 10:27-10:28 a.m.
(acknowledging mortgage funds paid by United Care Homes).  However, Ms. Tubianosa
admitted in her testimony before the court that she refinanced the mortgage on the
Property in 2004 during her marriage with Mr. Tambingon.  *Tubianosa Testimony*, March
13, 2015, at 10:38-10:39 a.m.

17.     Shapphire Resources filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 4, 2010, Case Number 2:10-bk-57493-EC, ECF 1 (filed in the main bankruptcy case before this court), and listed a fee simple ownership interest in the Property on its Schedule A, Real Property, ECF 9 (filed in the main bankruptcy case before this court).[2]

18.     Mr. Tambingon submitted at trial a copy of the Case History Activity Log in the state court unlawful detainer action entitled *Shapphire Resources, LLC v. Stanley Tambingon*, Case No. KC060597, Superior Court of California, County of Los Angeles. *Defendant's Exhibit D, Case History Activity Log.*  On September 9, 2011, this court entered an order lifting the automatic stay in bankruptcy under 11 U.S.C. § 362, which permitted the unlawful detainer action to be adjudicated before the Superior Court.  ECF 46 and 49 (filed in the main bankruptcy case before this court).  On December 21, 2011, the Superior Court made the following findings in the unlawful detainer action:

> The Court finds in favor of defendant and against the plaintiff.  The unlawful detainer is denied.  The Court finds that the Premises located at 2770 Cold Plains Drive, Hacienda Heights, CA 91745, is the sole property of Shapphire Resources, LLC.  Pursuant to agreement between Shapphire Resources and defendant Stanley Tambingon, the court finds there is a use agreement for the defendant of the aforementioned property.  The court finds that no evidence has been presented that the use of the property is unlimited.  Commissioner Gastner from Department 15 in the Rancho Cucamonga Court is to determine the duration of the use agreement.

*Defendant's Exhibit D, Case History Activity Log*, at 11-12 (emphasis added).  Ms. Tubianosa testified that she was aware of the unlawful detainer action and its result. *Tubianosa Testimony*, April 30, 2015, at 9:47-9:48 a.m.

19. On November 27, 2012, Shapphire Resources commenced this adversary proceeding in this court for turnover of the Property pursuant to Section 542 of the Bankruptcy Code, 11 U.S.C., and for declaratory relief regarding its ownership interest and right to possession in the Property.  ECF 1.

---

[2] The court may and does take judicial notice of its own files and records.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006)(citation omitted); Federal Rule of Evidence 201.

## **CONCLUSIONS OF LAW**

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (E). Venue is proper in this court pursuant to 28 U.S.C. § 1409(a).

Section 542 of the Bankruptcy Code provides in pertinent part the following:

> (a) . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).  As of the date of filing the bankruptcy petition in a bankruptcy case, "noncustodial entities with notice of a bankruptcy case holding estate property (or owing a matured debt to the debtor) have an *affirmative duty* to deliver that property (or pay the debt) to the trustee and to account for the property or its value" unless the property in question is of inconsequential value or benefit to the bankruptcy estate.  4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶ 21:1671 at 21-186 and ¶ 21:1710 at 21-192 (2014)(emphasis in original), *citing,* 11 U.S.C. §§ 542(a) and (b).

"The trustee has the burden of proving the estate is entitled to turnover."  *In re Jacobson*, 676 F.3d 1193, 1200-1201 (9th Cir. 2012), *citing,* 5 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 542.02 (16th ed. 2011).  To support a cause of action for turnover pursuant to Section 542 of the Bankruptcy Code, the bankruptcy trustee has the burden of proof, by a preponderance of the evidence, to establish that: (1) the property is in the possession, custody or control of a noncustodial third party entity; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to Code Section 363 or that the debtor could exempt under section 522, and (4) that the property is not of inconsequential value or benefit to the estate.  5 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 542.02 at 542-8 - 542-9 (16th ed. 2015); *see also In re Labib*, 2013 WL 5934326, slip op. at *4 (Bankr. C.D. Cal. 2013), *citing* 5 Resnick and Sommer, *Collier on Bankruptcy,* ¶ 542.02 at 542-5 (16th ed. 2013).

1    A debtor-in-possession in a Chapter 11 reorganization case, as is the case here,

2  has the standing to assert the right for turnover of assets of the bankruptcy estate on the

3  estate's behalf.  4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶

4  21:1733 at 21-194, *citing Georgia Pacific Corporation v. Sigma Service Corporation*, 712

5  F.2d 962, 965 (5th Cir. 1983); *see also,* 11 U.S.C. § 1107(a) ("Subject to any limitations

6  on a trustee serving in a case under this chapter, and to such limitations or conditions as

7  the court prescribes, a debtor in possession shall have all the rights, other than the right

8  to compensation under section 330 of this title, and powers, and shall perform all the

9  functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of

10  this title, of a trustee serving in a case under this chapter."); *United States v. Whiting*

11  *Pools, Inc.*, 462 U.S. 196, 201-212 (1983) (a debtor-in-possession in a Chapter 11

12  reorganization case was authorized to seek turnover of property seized by a secured

13  creditor, the Internal Revenue Service, holding a tax lien attaching to estate property

14  under 11 U.S.C. § 542(a)).

15    A bankruptcy trustee or debtor-in-possession under 11 U.S.C. § 542(a) may seek

16  turnover relief against an entity (other than a custodian) who *has* possession of the

17  property of the estate, or *had* possession of that property at some point during the

18  bankruptcy case.  *Shapiro v. Hensen*, 739 F.3d 1198, 1200-1204 (9th Cir. 2014), *citing,*

19  11 U.S.C. § 542(a).

20    The court finds that the evidence demonstrates that Mr. Tambingon as a "person"

21  qualifies as an "entity" under Section 101(15) of the Bankruptcy Code, 11 U.S.C.[3]  11

22  U.S.C. § 101(15).  No evidence was presented at trial showing that Mr. Tambingon is a

23  custodian of the Property as defined under Section 101(11) of the Bankruptcy Code.[4]   11

24  U.S.C. § 101(11).

25

26  [3]  "The term 'entity' includes person, estate, trust, governmental unit and United States trustee." 11 U.S.C.
   § 101(15).

27
   [4]  11 U.S.C. § 101(11) provides that:
28

1   Ms. Tubianosa's testimony that Mr. Tambingon never vacated the Property after

2   she asked him to do so in 2009, *Tubianosa Testimony*, March 13, 2015, at 10:59 a.m.,

3   and his admissions in his proposed findings of fact and conclusions of law that he

4   currently resides at the Property, *Defendant's "Response to Plaintiff's [proposed]*

5   *amended findings of facts [sic] and conclusions of law,"* ECF 77, at 16:9-10 (page:line)

6   ("My residence at 2770 Cold Plains Drive is for support. . . .") and *"Proposed Findings of*

7   *Facts [sic] and Conclusions of Law,"* ECF 64, at 2:11 (page:line) ("I legally reside at 2770

8   Cold Plains Drive. . . ."), demonstrate that Mr. Tambingon is currently in possession,

9   custody, or control of the Property during the pendency of this Chapter 11 bankruptcy

10  case of Shapphire Resources.

11      Therefore, the court finds that Shapphire Resources has satisfied its burden of

12  establishing by a preponderance of the evidence the first element of a turnover claim that

13  Mr. Tambingon, a non-custodial third-party entity, is in possession, custody, or control of

14  the Property, an asset of the bankruptcy estate, during the pendency of the bankruptcy

15  case.

16      "[F]ederal bankruptcy law governs the extent to which a debtor's property is

17  *included in the bankruptcy estate.*"  4 March, Ahart and Shapiro, *California Practice*

18  *Guide: Bankruptcy,* ¶ 21:1702 at 21-190 (emphasis in original), *citing, In re Farmers*

19  *Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986) and *In re MacDonald*, 164 B.R. 325,

20  328 (Bankr. C.D. Cal. 1994).  Section 541(a) of the Bankruptcy Code expressly provides

21  that property of the estate includes, *inter alia*, "(1) . . . all legal or equitable interests of the

22  debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).

23

24

---

25      The term 'custodian' means – (A) receiver or trustee of any of the property of the debtor, appointed
        in a case or proceeding not under this title; (B) assignee under a general assignment for the benefit

26      of the debtor's creditors; or (C) trustee, receiver, or agent under applicable law, or under a contract,
        that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing

27      a lien against such property, or for the purpose of general administration of such property for the
        benefit of the debtor's creditors.

28

1    However, "[s]tate law determines whether a particular right, power or interest is

2    'property' and the nature and extent of the debtor's interest therein." 4 March, Ahart and

3    Shapiro, *California Practice Guide: Bankruptcy*, ¶ 21:1701 at 21-190, *citing, Butner v.*

4    *United States*, 440 U.S. 48, 54 (1974) and *In re Coupon Clearing Service, Inc.*, 113 F.3d

5    1091, 1099 (9th Cir. 1997).

6    Under California law, "[p]roperty acquired before marriage is the acquiring

7    spouse's separate property, as is property obtained during marriage that can be *traced* to

8    a premarital acquisition." 2 Hogoboom and King, *California Practice Guide: Family Law*,

9    ¶ 8:71 at 8-25 (2015)(emphasis in original), *citing* California Family Code § 770(a)(1) and

10   (3)); *see also, In re Marriage of Valli*, 58 Cal. 4th 1396, 1400 (2014) ("Property that a

11   spouse acquired before the marriage is that spouse's separate property [*citing* California

12   Family Code § 770(a)(1)] .  Property that a spouse acquired during the marriage is

13   community property [*citing* California Family Code § 760] unless it is[, among other

14   things,] (1) traceable to a separate property source.").  "Like community property,

15   separate property does not lose its character as such by a mere change in *form or*

16   *identity*." 2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:71 at 8-25

17   (emphasis in original), *citing, Marriage of Koester,* 73 Cal.App.4[th] 1032, 1037-1038

18   (1999) and *Marriage of Rossin,* 172 Cal.App.4[th] 725, 735-736 (2009).[5]

19   The parties do not dispute that Ms. Tubianosa acquired sole legal and beneficial

20   ownership interest in the Property *prior to* her marriage to Mr. Tambingon and that this

21   fact characterizes the Property as Ms. Tubianosa's separate property at the time of her

22   marriage to Mr. Tambingon pursuant to California Family Code § 770(a)(1).  What they

23   do dispute is whether Mr. Tambingon acquired any community property interest in the

24   Property during their marriage.

---

[5] The court holds that the community property presumption that arises from California Family Code § 760 ("Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person *during* the marriage while domiciled in this state is community property") (emphasis added) does not apply in this case, since the parties do not dispute that the Property was acquired by Ms. Tubianosa in her name alone *prior to* her marriage to Mr. Tambingon and not during their marriage as provided for under § 760.

Specifically, Ms. Tubianosa asserts that the Property was her sole and separate property when she transferred it to Shapphire Resources on August 8, 2008. *Tubianosa Testimony*, March 13, 2015, at 10:40 a.m.; 11:09-11:10 a.m.  Her testimony was corroborated by the recorded 1982 Grant Deed, 2003 Grant Deed, Interspousal Transfer Grant Deed, and Shapphire Resources Grant Deed, *see Plaintiff's Exhibits 2 (1982 Grant Deed)*, 3 (*2003 Grant Deed*), 4 (*Interspousal Transfer Grant Deed*), and 5 (*Shapphire Resources Grant Deed*).  Mr. Tambingon contends that Ms. Tubianosa said that the Property belonged to them when he signed the Interspousal Transfer Grant Deed and that he acquired a community property ownership interest in the Property during his marriage to Ms. Tubianosa because Ms. Tubianosa used her community property earnings to pay the mortgage against the Property during the marriage and refinanced the mortgage in 2004.  *Tambingon Testimony*, April 30, 2015, at 10:21-10:23 a.m., 10:25-10:29 a.m., 10:34 a.m.; *Defendant's "Response to Plaintiff's [proposed] amended findings of facts [sic] and conclusions of law,"* ECF 77, at 2:17-24 (page:line(s)) ("I have equal interest [in the Property] when the funding comes from my hard word [sic] to United Care Homes.  The community asset is responsible to pay after the refinance x2 and borrowed against by hundreds of thousand [sic].  The property was not paid off when it was passed on.  It was bad shape financially.  It requires payment from our community asset.  Thus community interest regardless whose name it is under.  We are not the only people in the US that has that kind of arrangement.") and *"Proposed Findings of Facts [sic] and Conclusions of Law,"* ECF 64, at 2:14-19 (page:line) ("The property though it is under my wife's name, it is a community property as it was refinanced more than once during the course of our marriage with our hard earned money through our work at United Care Homes.")  However, Mr. Tambingon's testimony is not corroborated by the documentary or other evidence in the record in this case.

"Historically, marital property characterization [in California] has started with *form of title*, which, in some cases, may be dispositive."  2 Hogoboom and King, *California Practice Guide: Family Law*, ¶ 8:31 at 8-9 (emphasis in original), *citing inter alia,*

California Evidence Code § 662 and *Marriage of Lucas,* 27 Cal.3d 808, 813 (1980).

Section 662 of the California Evidence Code codified the title presumption recognized in

the California case law. *See* 7 California Law Revision Commission Reports 1, at 1100

(1965). This statute expressly provides that "[t]he owner of the legal title to property is

presumed to be the owner of the full beneficial title. [And t]his presumption may be

rebutted only by *clear and convincing proof.*" California Evidence Code § 662 (emphasis

added). "Absent a contrary statute, and unless ownership interests are otherwise

established by sufficient proof, *record title has been determinative of characterization*." 2

Hogoboom and King, *California Practice Guide: Family Law,* ¶¶ 8:31-8:32 at 8-9

(emphasis added), *citing* California Evidence Code § 662; *Marriage of Lucas,* 27 Cal.3d

at 813; and *Marriage of Fossum*, 192 Cal. App. 4th 336, 344-345 (2011).

The recorded 1982 and 2003 Grant Deeds show that Ms. Tubianosa acquired the

Property in her name alone prior to her marriage to Mr. Tambingon. *Plaintiff's Exhibits 2*

*and 3, 1982 Grant Deed* and *2003 Grant Deed*. The Grant Deeds characterize the

Property as her sole and separate property at the time of her marriage to Mr. Tambingon.

California Family Code § 770(a)(1). Mr. Tambingon did not present any documentary

evidence at trial showing that he acquired any ownership interest, community or

otherwise, in the Property before, during or after the execution of the recorded

Interspousal Transfer Grant Deed or before or at the time Ms. Tubianosa transferred the

Property to Shapphire Resources. Accordingly, the court finds that Mr. Tambingon has

failed to rebut the title presumption raised by the recorded 1982 Grant Deed, 2003 Grant

Deed, Interspousal Transfer Grant Deed, and Grant Deed to Shapphire Resources by

clear and convincing evidence. California Evidence Code § 662. These documents

demonstrate that the Property was Ms. Tubianosa's sole and separate property at the

time she transferred the Property to Shapphire Resources and that Shapphire Resources

acquired sole legal and beneficial interest in the Property on August 8, 2008 prior to the

commencement of its Chapter 11 bankruptcy case, thus establishing that the Property

1  was property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a) as of the date the

2  bankruptcy petition was filed in this bankruptcy case.

3          Perhaps the only ways which Mr. Tambingon could overcome the title presumption

4  would be to show: (1) "undue influence" by Ms. Tubianosa on him in the execution of the

5  Interspousal Transfer Grant Deed, *see, Fadel v. DCB United LLC (In re Fadel)*, 492 B.R.

6  1, 12 (9th Cir. BAP 2013) (observing that when the community property undue influence

7  presumption of California Family Code § 721 arises because the interspousal transaction

8  advantages one spouse over the other, the title presumption and application of California

9  Evidence Code § 662 are improper); *see also,* 2 Hogoboom and King, *California Practice*

10  *Guide: Family Law*, ¶¶ 8:35.1-8:35.4 at 8-10 – 8-13 (analyzing California Family Code §

11  721) (citations omitted); or (2) a transmutation of the character of the Property from

12  separate property to community property, *see, Marriage of Valli*, 58 Cal.4th at 1406 (the

13  form of title presumption does not apply where it conflicts with the transmutation statutes

14  in marital dissolution proceedings).

15          "Spouses have the right to enter into property-related transactions with each

16  other." *Marriage of Fossum*, 192 Cal.App.4th at 343, *citing* California Family Code §

17  721(a).  However, based on the confidential and fiduciary relationship with each other, if

18  one spouse secured an advantage from the interspousal transaction, a statutory

19  presumption arises under California Family Code § 721 that "the advantaged spouse

20  exercised undue influence and the transaction will be set aside." *Id.* at 344-345 (citations

21  omitted).  "When a presumption of undue influence applies to a transaction, the spouse

22  who was advantaged by the transaction must establish [by a preponderance of the

23  evidence] that the disadvantaged spouse's action was freely and voluntarily made, with a

24  full knowledge of all the facts, and with a complete understanding of the effect of the

25  transaction." *Id.* at 344 (internal quotations omitted) (citations omitted).

26          The parties did not present any evidence at trial of a transaction between Ms.

27  Tubianosa and Mr. Tambingon during the marriage regarding the Property other than the

28  Interspousal Transfer Grant Deed.  Since no evidence was presented at trial showing a

transaction between Ms. Tubianosa and Mr. Tambingon transmuting the character of the

Property from Ms. Tubianosa's separate property to their community property prior to the

execution of the Interspousal Transfer Grant Deed, the court finds that Ms. Tubianosa

could not have secured an advantage from the Interspousal Transfer Grant Deed, nor

could Mr. Tambingon have been disadvantaged by the Interspousal Transfer Grant Deed,

since the characterization of the Property did not change as a result of the Interspousal

Transfer Grant Deed.  The Interspousal Transfer Grant Deed only confirmed the pre-

existing character of the Property as Ms. Tubianosa's sole and separate property.  In fact,

the court notes that had the characterization of the Property changed from Ms.

Tubianosa's separate property to their community property, Mr. Tambingon would have

been the advantaged spouse and Ms. Tubianosa would have been the disadvantaged

one.   It is also difficult to see how as a factual matter that there was undue influence

here based on the evidence in the record because Mr. Tambingon admitted that he never

read the Interspousal Transfer Grant Deed before he signed it and he is highly educated

as indicated by his 22 completed years of education as noted on his marriage license

with Ms. Tubianosa (*Plaintiff's Exhibit N*) and by him being a medical doctor in his own

country, Indonesia (*Plaintiff's Exhibit B* at 4 – the family law court noted in one of its

minute orders that "RESPONDENT IS APPARENTLY A MEDICAL DOCTOR IN HIS

COUNTRY").  Accordingly, the court finds that the undue influence presumption of

California Family Code § 721(a) did not arise and does not prohibit the application of the

record title presumption and California Evidence Code § 662 in this case.

"Married persons may, through a transfer or an agreement, transmute—that is,

change—the character of property from community to separate or from separate to

community." *Marriage of Valli*, 58 Cal. 4th at 1400, *citing,* California Family Code § 850.

Pursuant to California Family Code § 852(a),

> A transmutation of real or personal property is not valid unless made in
> writing by an express declaration that is made, joined in, consented to, or
> accepted by the spouse whose interest in the property is adversely
> affected.

"To satisfy the requirement of an 'express declaration,' a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed." *Marriage of Valli*, 58 Cal. 4th at 1400 (citation omitted).

Mr. Tambingon did not present any documentary evidence at trial showing that Ms. Tubianosa expressly declared in writing that she agreed to transmute or change the character of the Property from her separate property to their community property. Further, as explained above, the Intersposual Transfer Grant Deed did not attempt to change the character of the Property, but merely confirmed the existing character of the Property as Ms. Tubianosa's sole and separate property. Accordingly, based on the evidentiary record, the court finds that there was no transmutation of the Property changing the character of the Property from Ms. Tubianosa's separate property to their community property, and the transmutation statutes do not conflict with the application of the title presumption and California Evidence Code § 662 in this case.

As explained below, the court finds that Mr. Tambingon's uncorroborated testimony that Ms. Tubianosa said the Property belonged to them and that he acquired a community property ownership interest in the Property during his marriage to Ms. Tubianosa because Ms. Tubianosa used her community property earnings to pay the mortgage against the Property during their marriage and refinanced the mortgage in 2004 (*Tambingon Testimony*, April 30, 2015, at 10:21-10:23 a.m., 10:25-10:29 a.m., 10:34 a.m.) is insufficient to rebut the title presumption by clear and convincing evidence.

"The form of title presumption cannot be rebutted simply by tracing to the source of funds used to acquire the property or by testimony of either spouse's undisclosed intentions." 2 Hogoboom and King, *California Practice Guide: Family Law*, ¶ 8:34 at 8-10, *citing, Marriage of Lucas*, 27 Cal.3d at 813 and *Marriage of Fossum*, 192 Cal.App.4th at 345 and n. 5. Thus, Mr. Tambingon's uncorroborated testimony that Ms. Tubianosa allegedly said that the Property belonged to them is insufficient to rebut the title presumption because the court does not find such testimony to be credible, but even if it

1  were credible, such testimony of an oral transmutation is legally insufficient under

2  California Family Code § 852(a) which requires a writing.  Furthermore, even if Mr.

3  Tambingon had provided sufficient evidence showing that Ms. Tubianosa had used

4  community property funds to pay the mortgage during the marriage, which he did not, this

5  also would have been insufficient to rebut the title presumption.  Although Ms. Tubianosa

6  admitted that she refinanced the Property in 2004 during their marriage (*see Tubianosa*

7  *Testimony*, March 13, 2015, at 10:38-10:39 a.m.), Mr. Tambingon failed to provide any

8  documentary evidence showing that the refinancing of the Property changed the

9  character of the Property from Ms. Tubianosa's separate property to their community

10 property.[6]  "The party seeking to overcome the presumption must, at a minimum, present

11 evidence of a *communicated intention*, *agreement or common understanding* between

12 the spouses that ownership status is to be other than as indicated by the form of title,"

13 which Mr. Tambingon has failed to do by clear and convincing evidence.  2 Hogoboom

14 and King, *California Practice Guide: Family Law,* ¶ 8:34 at 8-10, *citing, Marriage of*

15 *Lucas*, 27 Cal.3d at 813 and *Marriage of Fossum*, 192 Cal.App.4th at 345 and n. 5.  This

16 was not done, and the court so finds.

17

18

19

---

20 [6] At most, Mr. Tambingon, upon proper proof, could obtain "a pro tanto community property interest in such
property in the ratio that the payments on the purchase price with community funds bear to the payments
21 made with separate funds." *In re Marriage of Marsden*, 130 Cal.App.3d 426, 436-437 (1982), *citing, In re
Marriage of Moore*, 28 Cal.3d 366, 371-372 (1980).  "The same *Moore/Marsden* apportionment approach
22 applies where there is a premarital loan secured by a party's separate property and, instead of making
payments during marriage on the original mortgage with community funds, the property is *refinanced* during
23 marriage and the original mortgage is paid in full with proceeds of a community property loan obtained
jointly by the parties."  *See* 2 Hogoboom and King, *California Practice Guide: Family Law,* ¶ 8:308 at 8-114,
24 *citing Marriage of Branco*, 47 Cal.App.4th 1621,1627 (1996)).  The evidence of a *Moore/Marsden* claim is
lacking here because there is no evidence that the payments on the refinanced mortgage came from
25 community property.  The evidence from the testimony of the parties is that a third party, United Care
Homes, made the payments on the refinanced mortgage and there was no explanation, let alone
26 documentary evidence, showing how such payments constituted community property of Mr. Tambingon
and Ms. Tubianosa. Mr. Tambingon's conclusory statements during trial do not make them so.  Even if Mr.
27 Tambingon could have shown that the *Moore/Marsden* rule applied in this case, which he did not due to the
lack of evidence submitted by him in support of his arguments, Mr. Tambignon could only obtain a pro tanto
28 community property interest in the Property, which does not amount to ownership rights in the Property.

1    Therefore, based on the foregoing, the court finds that the Property constitutes

2  property of the bankruptcy estate of Shapphire Resources pursuant to Section 541(a) of

3  the Bankruptcy Code, 11 U.S.C.

4    An entity in possession of property that the debtor-in-possession *may* use, sell or

5  lease under 11 U.S.C. § 363 "shall" deliver that property to the debtor in possession and

6  account for the property or its value, *unless* the property is of inconsequential value or

7  benefit to the estate.  4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*,

8  ¶ 21:1682 at 21-187 (emphasis in original), *citing* 11 U.S.C. § 542(a).  The debtor in

9  possession "need *not actually* use the property subject to turnover; it is sufficient that

10 such property *may* be used."  *Id.* (emphasis in original).

11   The court finds that Shapphire Resources has shown, by a preponderance of the

12 evidence, that the Property may be used, sold or leased pursuant to Section 363, since

13 Shapphire Resources is in the business of leasing real estate that houses

14 developmentally disabled individuals, *Tubianosa Testimony*, March 13, 2015, at 10:32-

15 10:33 a.m., and the Property is a residential property and has been renovated for that

16 business purpose, *id.*, at 10:42-10:43 a.m., 10:48-10:49 a.m.

17   As explained above, turnover of property belonging to the estate is excused only

18 where the property is of inconsequential value or benefit to the estate.  11 U.S.C. §

19 542(a).  The court finds that, given the nature of the Property, its renovation to be used

20 as a home for the developmentally disabled, and its ability to generate income, *see*

21 *Tubianosa Testimony*, March 13, 2015, at 10:31-10:33 a.m.;10:42-10:43 a.m.; 10:48-

22 10:49 a.m., and that no party has argued that the Property is of inconsequential value or

23 benefit to the estate, Shapphire Resources has shown, by a preponderance of the

24 evidence, that the Property is not of inconsequential value or benefit to the estate.

25   Therefore, based on the above analysis and the evidentiary record, the court finds

26 and declares that the Property is property of the bankruptcy estate of Shapphire

27 Resources pursuant to Section 541(a) of the Bankruptcy Code and that Shapphire

28

Resources as the debtor-in-possession is entitled to turnover and right to possession of

the Property on behalf of the estate pursuant to Section 542 of the Bankruptcy Code.

**"**[N]on-custodial entities with notice of a bankruptcy case holding estate property have an

*affirmative duty* to deliver that property to the trustee [or debtor-in-possession]

. . ." pursuant to 11 U.S.C. § 542.  4 March, Ahart and Shapiro, *California Practice Guide:*

*Bankruptcy*, ¶ 21:1671 at 21-186 (emphasis in original), *citing* 11 U.S.C. §§ 542(a).

As to Mr. Tambingon's rights to possession and use of the Property under state

law, the court finds that at most, Mr. Tambingon was a tenant at will of Ms. Tubianosa

and later Shapphire Resources for the reasons stated below.

A tenancy for years conveys the right to exclusive use and possession of the

premises for a definite or fixed period of time, terminable automatically upon the specified

expiration date.  1 Friedman, Garcia and Hagarty, *California Practice Guide: Landlord*

*and Tenant,* ¶¶ 2:6-2.7 at 2A-6 (2015), *citing inter alia,* California Civil Code § 944.  "The

fixed term can be for any stated period of time . . . but the term must be *specified* in the

lease or be capable of certain determination from the lease provisions.  If no fixed term is

ascertainable from the lease, the tenancy is *not* an estate for years (it will be deemed a

tenancy from month-to-month)."  *Id.*

A periodic (or month-to-month) tenancy is most common in the residential

(particularly, apartment) context.  *Id.*, ¶ 2:16 at 2A-8 – 2A-9, *citing inter alia,* California

Civil Code §§ 1946 and 1946.1.  "They have no fixed term; rather, a periodic tenancy

continues for successive periods of the same duration for an *indefinite* term . . ." *Id.*

(emphasis in original).   "The tender of rent and acceptance of rent for each successive

period continues the periodic tenancy for the same term."  *Id.*   A tenancy at will,

"although 'consensual' in nature, is not based on an express rental agreement.  It arises

when the tenant takes possession of the premises *with the landlord's permission*, but for

no stated term and without provisions for payment of rent."  *Id.*, ¶ 2:11 at 2A-7, *citing,*

*Covina Manor, Inc. v. Hatch,* 133 Cal.App.2d Supp. 790, 793 (1955).  Both the periodic

tenancy and tenancy at will are terminable by either party; however, the landlord's

termination must be preceded by 30 days written notice.  *Id.*, ¶¶ 2:12 at 2A-7 ("The

landlord's termination [of a tenancy at will] must be preceded by 30 days' written notice"),

*citing inter alia,* California Civil Code § 789, and 2 Friedman, Garcia and Hagarty,

*California Practice Guide: Landlord and Tenant*, ¶¶ 7:197 - 7:198 at 7-100 ("A month-to-

month tenancy generally may be terminated upon a minimum 30 days' [written] notice"),

*citing inter alia,* California Civil Code § 1946.  Generally, the notice to terminate may be

served for any reason or no reason at all.  *Id.*, ¶ 7:202 at 7-102, *citing, People ex rel.

Department of Transportation v. Lucero,* 114 Cal.App.3d 166, 174-176 (1980).

        Ms. Tubianosa testified that in early 2006 she offered to allow Mr. Tambingon to

move to the Property and live there temporarily until the end of 2006. *Tubianosa

Testimony*, March 13, 2015, at 11:03-11:05 a.m., 11:17-11:18 a.m., 11:29-11:30 a.m.,

11:39-11:41 a.m., 11:43-11:44 a.m.; *Tubianosa Testimony*, April 30, 2015, at 9:37-9:38

a.m., 9:50 a.m  Since the alleged fixed term was not specified in a lease agreement or

capable of certain determination from the lease provisions, *see Tubianosa Testimony,*

March 13, 2015, at 10:44 a.m., the court finds that a tenancy for years was not created.

Instead, in light of the facts that Ms. Tubianosa initially permitted Mr. Tambingon to

remain on the Property without a provision for payment of rent, and the lack of a lease

agreement specifying a fixed term, a tenancy at will appears to have been created as

opposed to a month-to-month tenancy, which generally requires the tender of rent and

acceptance of rent for each successive period.

        This conclusion that a tenancy for years was not created and that at most, a

tenancy at will was created is also substantiated by the evidence of the state court

proceedings between the parties, Mr. Tambingon, Ms. Tubianosa and Shapphire

Resources.  In the unlawful detainer case, the state court had denied the claim of

Shapphire Resources for unlawful detainer against Mr. Tambingon, holding that a use

agreement between Shapphire Resources and him allowed his use of the Property.

Apparently, as Mr. Tambingon argues, there was some agreement between him and Ms.

Tubianosa regarding his use of the Property in the family law case as shown by Exhibit

C, the letter of Ms. Tubianosa's family law counsel to his family law counsel dated

October 8, 2009, stating "Additionally, and as we agreed yesterday, my client does not

believe it is a good idea to have Mr. Tambingon stay at her property in Chino Hills with

her.  Based on this, Mr. Tambingon may remain on the property on Cold Plains, if he so

desires.").  Subsequently, in 2011, although the state court denied the unlawful detainer

claim of Shapphire Resources, the state court found that the Property is "the sole

property of Shapphire Resources, LLC."  *Defendant's Exhibit D, Case History Activity

Log*, at 12.  The state court further found that although "there is a use agreement for the

defendant [Mr. Tambingon] of the aforementioned property," it also found that "no

evidence has been presented that the use of the property is unlimited."  *Id.*  The state

court directed that "Commissioner Gastner from Department 15 in the Rancho

Cucamonga Court is to determine the duration of the use agreement."  *Id.*  There is no

evidence in the record that the state court by Commissioner Gastner ever made any

determination of the duration of the use agreement, though a referral to him for such

determination was made over four years ago.

Although Ms. Tubianosa testified that she asked Mr. Tambingon to vacate the

Property in 2009 during their annulment proceedings, *id.*, at 11:15 a.m., and Mr.

Tambingon presented evidence that an unlawful detainer action was commenced by

Shapphire Resources against him regarding the Property, *Defendant's Exhibit D, Case

History Activity Log*, which the court believes is sufficient notice for Mr. Tambingon to

know that he is no longer welcome on the Property, no evidence was presented

regarding a 30-day notice to terminate or vacate the Property.

These circumstances notwithstanding, the court, having found that Shapphire

Resources as the debtor-in-possession is entitled to turnover and right to possession of

the Property pursuant to Section 542 of the Bankruptcy Code, which supersedes any

State law notice requirements that are contrary to or conflict with Section 542, *see* United

States Constitution, Article VI, Clause 2 ("This Constitution, and the laws of the United

States which shall be made in pursuance thereof; and all treaties made, or which shall be

made, under the authority of the United States, shall be the supreme law of the land; and

the judges in every State shall be bound thereby, anything in the Constitution or laws of

any State to the contrary notwithstanding."), finds that Mr. Tambingon has an affirmative

duty to turn over the Property as property of the bankruptcy estate he has in his

possession or custody to Shapphire Resources, the debtor-in-possession.  Therefore, the

court will grant Shapphire Resources's claim for turnover relief and will order Mr.

Tambingon to vacate the Property and turn over possession to Shapphire Resources.

   In so granting the turnover claim and ordering Defendant to turn over the Property

to Shapphire Resources, the court has considered and rejects Defendant's argument that

the turnover claim must be denied and dismissed based on the *Rooker-Feldman*

doctrine.  *Response to Plaintiff's [proposed] Amended Findings of Fact and Conclusions

of Law,* ECF 77 at 13-16, *citing inter alia, In re Schwartz,* 409 B.R. 240 (1st Cir. BAP

2008).  As the United States Court of Appeals for the Ninth Circuit has stated,

> The *Rooker-Feldman* doctrine has evolved from two Supreme Court cases
> from which its name is derived.  *See Rooker v. Fidelity Trust  Co.,* 263 U.S.
> 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of
> Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).
> *Rooker-Feldman* prohibits a federal district court from exercising subject
> matter jurisdiction over a suit that is a de facto appeal from a state court
> judgment.  In part, this prohibition arises through a negative inference from
> 28 U.S.C. § 1257, which grants jurisdiction to review a state court judgment
> in the United States Supreme Court.  That is, while § 1257 explicitly
> authorizes the United States Supreme Court to hear an appeal from a state
> court judgment, it impliedly prohibits the lower federal courts from doing so.
> If a plaintiff brings a de facto appeal from a state court judgment, *Rooker-
> Feldman* requires that the district court dismiss the suit for lack of subject
> matter jurisdiction.  Determining what constitutes a forbidden de facto
> appeal, however, has sometimes proven difficult for the lower courts.

*Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1139 (9th Cir. 2004) (citations omitted).  The

Ninth Circuit has provided general guidance on the doctrine:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision
> by a state court, and seeks relief from a state court judgment based on that
> decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district
> court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an
> allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does
> not bar jurisdiction.  If there is simultaneously pending federal and state

court litigation between the two parties dealing with the same or related
issues, the federal district court in some circumstances may abstain or stay
proceedings; or if there has been state court litigation that has already gone
to judgment, the federal suit may be claim-[or issue-] precluded under [28
U.S.C.] § 1738.  But in neither of these circumstances does *Rooker-
Feldman* bar jurisdiction.

*Id.* at 1139-1140*, quoting, Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003).  "*Rooker-*

*Feldman* applies only when the federal plaintiff both asserts as her injury legal error or

errors by the state court *and* seeks as her remedy relief from the state court judgment."

*Kougasian v. TMSL, Inc.,* 359 F.3d at 1140.

The circumstances of this case are unusual in that the court had granted the

motion of Shapphire Resources for relief from the automatic stay to allow the state court

litigation proceedings in its unlawful detainer case and in the family law case between

Ms. Tubianosa and Mr. Tambingon to proceed post-petition, but that the state court in the

unlawful detainer action found for Mr. Tambingon, denying unlawful detainer relief,

holding that a use agreement between Shapphire Resources and him allowed his use of

the Property.  Afterwards, Shapphire Resources brought the instant adversary

proceeding for turnover of the Property from Mr. Tambingon, and on its face, Mr.

Tambingon makes a colorable argument based on the *Rooker-Feldman* doctrine that the

adversary proceeding under federal bankruptcy law for turnover of the Property is an

impermissible de facto appeal of the state court unlawful detainer judgment in his favor

because it only brought the turnover action in bankruptcy court only after being denied

relief for possession of the Property in the state court unlawful detainer action.  However,

the circumstances of this case, though unusual, indicate that the adversary proceeding is

not an impermissible de facto appeal of the state court judgment in the unlawful detainer

case under the *Rooker-Feldman* doctrine because the court's exercise of jurisdiction over

the turnover claim of Shapphire Resources under federal bankruptcy law is not

inconsistent with the state court's judgment and findings in the unlawful detainer case

reflected in the case history for proceedings on December 21, 2011.  Although the state

court denied the unlawful detainer claim of Shapphire Resources, the state court found

24

that the Property is "the sole property of Shapphire Resources, LLC." *Defendant's Exhibit D, Case History Activity Log*, at 12.  The state court further found that although "there is a use agreement for the defendant [Mr. Tambingon] of the aforementioned property," it also found that "no evidence has been presented that the use of the property is unlimited." *Id*.  The state court directed that "Commissioner Gastner from Department 15 in the Rancho Cucamonga Court is to determine the duration of the use agreement." *Id*.  There is no evidence in the record that the state court by Commissioner Gastner ever made any determination of the duration of the use agreement, though a referral to him for such determination was made over four years ago.  Thus, there is no judgment of the state court determining the duration of Mr. Tambingon's use of the Property, which would preclude this court under the *Rooker-Feldman* doctrine from making such a determination now in adjudicating the turnover relief claim of Shapphire Resources under Section 542 of the Bankruptcy Code.

The court's determination here that Mr. Tambingon is a tenant at will on the Property owned by Shapphire Resources is not inconsistent with the state court's judgment and findings in the unlawful detainer case.  The state court found that there was no evidence that Mr. Tambingon had unlimited use of the Property and made a referral to a court commissioner to determine the duration of the agreement for Mr. Tambingon's use of the Property, which apparently was not done, and which can be done by this court, particularly since it has been at least four years since the state court commissioner was supposed to determine this.  As determined by the state court, which this court also determines, Mr. Tambingon does not have unlimited use of the Property, and his use may be terminated immediately in that he is using property of the bankruptcy estate, which does not provide any benefit to the bankruptcy estate or creditors as he is not paying rent or providing any other benefit to the bankruptcy estate for his use of the Property.  Although this court granted stay relief for the state court to proceed with the unlawful detainer case, this court has not abstained from hearing any claims with respect to the Property, which is an asset of the bankruptcy estate.  This court as discussed

1  previously has subject matter jurisdiction over the turnover claim under federal law, and

2  the state court did not have exclusive rights to determine the rights to possession of the

3  Property.  As noted previously, a bankruptcy trustee or debtor-in-possession under 11

4  U.S.C. § 542(a) may seek turnover relief against an entity (other than a custodian)  who

5  *has* possession of the property of the bankruptcy estate, or *had* possession of that

6  property at some point during the bankruptcy case.  *Shapiro v. Hensen*, 739 F.3d at

7  1200-1204, *citing,* 11 U.S.C. § 542(a).  Thus, Shapphire Resources as the debtor-in-

8  possession in this bankruptcy case may still seek turnover relief against Mr. Tambingon

9  now.

10      As also noted previously, "*Rooker-Feldman* applies only when the federal plaintiff

11  both asserts as her injury legal error or errors by the state court *and* seeks as her remedy

12  relief from the state court judgment."  *Kougasian v. TMSL, Inc.,* 359 F.3d at 1140.  This is

13  not such a situation here since the federal plaintiff, Shapphire Resources, is not asserting

14  as its injury legal errors by the state court and does not seek relief from the state court

15  judgment from the unlawful detainer case.  As to the family law case in state court, the

16  evidence in the record does not support Mr. Tambingon's argument that the *Rooker-*

17  *Feldman* doctrine applies here.  Mr. Tambingon in his Exhibit B has provided copies of

18  several of the state court's minute orders in the family law case, but none of these orders

19  is the judgment of the state court in the family law case, and none indicated any factual

20  finding that the Property was community property.  One minute order dated August 4,

21  2009 provided for Mr. Tambingon's use of the Property on an interim basis ("UNTIL THE

22  NEXT HEARING, PETITIONER [sic] STANLEY TAMBINGON CAN USE, CONTROL,

23  AND POSSESS THE FOLLOWING PROPERTY AND THINGS LOCATED AT 2770

24  COLD PLAINS DRIVE, HACIENDA HEIGHTS, CALIFORNIA  91745."  *Exhibit B, Family*

25  *Law Case Minute Orders* at 1.  Another minute order dated October 6, 2009 stated:

26  "COURT FINDS: PER AGREEMENT OF COUNSEL: THE ISSUE REGARDING

27  EXCLUSIVE USE AND POSSESSION OF THE RESIDENCE IS SETTLED."  *Id.* at 3.  If

28  the reference to "RESIDENCE" meant the Property, there is no indication what was the

terms of the settlement regarding use of the Property.  As such, this did not preclude the

state court in the unlawful detainer case from finding the Property to be "the sole property

of Shapphire Resources, LLC." *Defendant's Exhibit D, Case History Activity Log*, at 12,

that "there is a use agreement for the defendant [Mr. Tambingon] of the aforementioned

property," and that "no evidence has been presented that the use of the property is

unlimited." *Id.*  Moreover, the state court in the unlawful detainer case then referred the

matter to a court commissioner as to how long Mr. Tambingon could use the Property

since his use was not unlimited, which determination apparently was never made, so that

this court can now make that determination.  Finally, the minute order dated May 27,

2011 in the family law case which apparently set forth the intended disposition of that

case made no findings regarding the character of the Property as community property

and did not even refer to the Property at all.  Thus, there is insufficient evidence of a state

court judgment from the family law case to support a *Rooker-Feldman* defense that

Shapphire Resources as Ms. Tubianosa's party in privity is taking an impermissible de

facto appeal of the state court's judgment in the family law case that Mr. Tambingon was

the owner of the Property based on his community property interest, and the court also

rejects his *Rooker-Feldman* defense based on the family law case.

　　　　For the foregoing reasons, the court determines that Shapphire Resources has

met its burden of proving by a preponderance of the evidence that it is entitled to turnover

of the Property by Mr. Tambingon on its claim under Section 542 of the Bankruptcy Code,

11 U.S.C., and for declaratory relief under 28 U.S.C. § 2201 that it is the owner of the

Property and is entitled to judgment on its claims pursuant to Rule 7001(1) and (9) of the

Federal Rules of Bankruptcy Procedure.  The court orders counsel for Shapphire

Resources to lodge a proposed judgment for review and approval by the court which is

///

1  consistent with these findings of fact and conclusions of law within 30 days of the date of

2  entry of these findings of fact and conclusions of law.

3      **IT IS SO ORDERED.**

4                            ###

Date: January 25, 2016

_____

Robert Kwan
United States Bankruptcy Judge